UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| CURTIS TYRONE LOVE, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | CAUSE NO.: 2:10-CV-409-TLS |
| SUPERINTENDENT, INDIANA STATE PRISON, | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

The Petitioner, Curtis Tyrone Love, a prisoner confined at the Indiana State Prison, filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [ECF No. 1], challenging his 2006 conviction in the Elkhart Circuit Court for murder, for which he is serving a fifty-eight-year sentence. The Indiana Court of Appeals affirmed the Petitioner's conviction on April 10, 2007 (Mem. Decision, ECF No. 11-5), and the Petitioner did not seek transfer to the Indiana Supreme Court. The Petitioner filed a motion for post-conviction relief, which the Elkhart Circuit Court denied on April 28, 2009. (Order, ECF No. 1-1.) The Indiana Court of Appeals affirmed the denial of the post-conviction motion on November 18, 2009. (Mem. Decision, ECF No. 1-2.) The Indiana Supreme Court denied the petition to transfer on January 14, 2010 (Docket, ECF No. 11-6 at 4–5), and the Petitioner timely filed his Petition in this Court on October 13, 2010.

In reviewing a petition for federal collateral relief from a state court judgment of conviction, this Court must presume as correct the facts as found by the state courts. 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Ruvalcaba v. Chandler*, 416 F.3d 555, 559–60 (7th Cir. 2005). Moreover, the Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Ruvalcaba*, 416 F.3d at

## BACKGROUND

As stated by the Indiana Court of Appeals on direct appeal, the facts in the Petitioner's case are as follows:

> [I]n February 2001, seventeen-year-old Vasani Cy Mankhwala (Cy) moved to Elkhart with his father, Ephraim Mankhwala, and Cy's two younger brothers. Living on Morton Avenue, Cy quickly became friends with Marvin Gates and Netfa Miller, and they spent a lot of time together making rap music. The three were also friends with Love, who lived next door to Gates on Morton Avenue.
>
> In the late afternoon of June 29, 2001, Cy and his friends gathered in Gates's backyard. Cy, Gates, and Miller rapped while others, including Love, listened. At some point, a brief verbal argument erupted between Cy and Love. The argument ended when Gates's older brother told them to quiet down. Thereafter, Love became abnormally quiet, and he left on Cy's bicycle around 9:00 p.m. When Love failed to return, Cy, Gates, and Miller when to Miller's house to work on their music. Gates left Cy and Miller around 1:00, as Miller and Cy continued their music.
>
> Around midnight, Miller and Cy walked through the neighborhood to Main Street on an errand for a friend. As they were walking back on Morton Avenue towards Miller's house, they encountered Love riding a bike. They greeted each other and exchanged "love and taps". Miller then proceeded to his house around 12:30 or 1:00 a.m., as Cy and Love went together towards Cy's house, which was about a block away.
>
> Shortly after 1:00, Cy entered his house and ran upstairs to his twelve-year-old brother's room. He woke up his brother to ask if a friend could borrow his bike. His brother said no. When Cy came back downstairs, Ephraim told his son that it was late and he needed to stay in. Cy replied that he would be right back. Around this same time, Ephraim noticed movement outside the window. Ephraim pulled the window sheers back and saw Love trying to hide from Ephraim's view. Ephraim thought nothing of it at the time, as Love was a friend of Cy's. Soon thereafter, Ephraim went to bed.
>
> At approximately 3:15 a.m., Elkhart Police Officer Norm Friend was on routine patrol in the area when he encountered a body, later identified as Cy's, lying in the middle of Chase Street, just off of Main Street. Cy was not wearing a shirt and was lying face down in a large pool of partially dried blood. It was apparent to Officer

Friend that Cy was dead and riga [sic] mortis had already begun to set in. A blood-covered knife blade with no handle was found a short distance from the body. And the blade, which appeared to be from a steak knife, was bent. In addition to having received multiple blunt-force injuries to the head and face, Cy had been stabbed twenty-one times about the head, face, neck, back, arms, and legs. Of particular note, Cy's lungs had been punctured five separate times, causing "relatively rapidly lethal" injuries. Cy also received a stab wound to the back of his neck, which punctured the spinal cord and would have rendered him paralyzed.

The investigation soon revealed Cy's bicycle lying in a nearby alley that ran perpendicular to Chase Street and parallel to Main Street. The bike was approximately 340 feet from the body. A shirt was lying next to the bike. Officers also discovered a trail of blood drops along a quarter-block area. The blood trail began at a picket fence that was partially knocked over at 1909 S. Main Street, one of the residences behind which the bike was found. The trail continued south on the sidewalk along Main Street and then west onto the sidewalk along Chase Street, where the body was found. In addition to the sidewalk and street, blood was discovered on the back of a white pickup truck parked just off of Chase Street at 1919 S. Main Street. Detectives recovered random samples of blood found at the scene. Many of the samples revealed Cy's DNA, such as on the fence, along the sidewalks, and on the knife blade. Love's blood and DNA, however, were also discovered within a short distance of the body, on the tailgate of the pickup truck and the sidewalk along Chase Street.

In the beginning of July, Love's uncle, John David Love, received a phone call from Love's mother who lived in California. As a result, John immediately left a family barbecue to locate Love "to find out what was going on." He found Love a while later, and the two drove around and talked. John informed his nephew that he had been "hearing some stuff," and Love then confided in John. Love told his uncle that he had gotten into a "misunderstanding with a friend" that resulted in an argument. Love said that his friend pulled a knife and, after a scuffle, Love got possession of the knife and stabbed his friend with it. Love indicated to his uncle that this occurred "in an alley off of Main." Love further explained that he did not think he had killed his friend but that he felt it was "his life or the guy['s] life."

On July 4, 2001, police executed a search warrant at the home where Love was living with his aunt. Two steak knives were recovered from the kitchen, the blades of which matched that found at the murder scene.

The State charged Love, on June 3, 2005, with murder. Love's three-day jury trial concluded on May 17, 2006, with the jury finding him guilty as charged.

(Mem. Decision 2–5, ECF No. 11-5 (internal record citations and footnote omitted).) During

closing argument at trial, the Petitioner's counsel argued that voluntary manslaughter happens if you commit the elements required for murder "but you're doing it under sudden heat. In other words, you're mad as hell. And if somebody drew a knife on you, you might be mad as hell too." (Mem. Decision 4, ECF No. 1-2 (citing to the record).)

## ANALYSIS

I.  **Ineffective Assistance of Trial Counsel**

In ground one of his Petition, the Petitioner asserts that his trial counsel was ineffective "for failing to ensure that the jury was properly instructed as to the burden of proof for murder and voluntary manslaughter." (Petition 6.) The final jury instructions at trial informed the jury that it could only find the Petitioner guilty of voluntary manslaughter if the State proved that the Petitioner killed the victim while acting in a sudden heat. The final instructions also <u>failed</u> to inform the jury that the State had the burden to disprove sudden heat in order to secure a conviction for murder. Both of these instructions were erroneous under Indiana law. *See Sanders v. Cotton*, 398 F.3d 572, 581–82 (7th Cir. 2005) (discussing Indiana murder and voluntary manslaughter jury instructions). In its Response, the Respondent argues that the Indiana Court of Appeals reasonably applied federal law when it denied the Petitioner's claims, and therefore habeas relief is inappropriate under 28 U.S.C. § 2254(d). Specifically, the Respondent argues that no facts in evidence at the Petitioner's trial raised sudden heat as a mitigating factor. Therefore, because an instruction on voluntary manslaughter was not appropriate, the Petitioner's trial counsel was not ineffective for failing to object to the erroneous instructions, and the Petitioner could not have been prejudiced by counsel's failure to object to instructions

4

concerning an issue not raised by the evidence. The Petitioner insists, in his Reply, that the facts at trial "clearly raise[d] and support[ed] the defense of sudden heat." (Reply 10, ECF No. 19.)

"[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." *Mullaney v. Wilbur*, 421 U.S. 684, 704 (1975). *See Sanders*, 398 F.3d at 581 ("Indiana law . . . requires the prosecution to prove the absence of sudden heat to convict a defendant of murder . . . once the defendant has introduced some evidence that he or she committed the crime under sudden heat.") (citing *McBroom v. State*, 530 N.E.2d 725, 728 (Ind. 1988)); *Harrington v. State*, 516 N.E.2d 65, 66 (Ind. 1987) (stating that a defendant is "entitled to a jury instruction explaining that the State must negate the presence of sudden heat beyond a reasonable doubt" where some evidence at trial suggests sudden heat). Further, sudden heat is not an element of voluntary manslaughter in Indiana. *Sanders*, 398 F.3d at 582; *Palmer v. State*, 553 N.E.2d 1256, 1259 (Ind. Ct. App. 1990). Where sudden heat is raised by the evidence, jury instructions which improperly state that the prosecution must prove the presence instead of the absence of sudden heat "do[] nothing to inform [the jury] that the absence of sudden heat is an element of murder . . . and that it is the prosecution that bears the burden of proof." *Sanders*, 398 F.3d at 582.

In Indiana, "voluntary manslaughter is a lesser-included offense of murder," *Watts v. State*, 885 N.E.2d 1228, 1232 (Ind. 2008); however, "[i]f the evidence does not . . . support the giving of a requested instruction on a[] . . . lesser offense, then a trial court should not give the requested instruction," *Wright v. State*, 658 N.E.2d 563, 567 (Ind. 1995). The burden lies with a defendant "to produce some appreciable evidence of sudden heat." *Burris v. State*, 590 N.E.2d

5

576, 581 (Ind. Ct. App. 1992) (quotation marks omitted). "Where there is no evidence of sudden heat, an incorrect instruction on voluntary manslaughter is not reversible error." *Id.* (citing *Hensley v. State*, 499 N.E.2d 1125, 1127 (Ind. 1986)).

In seeking to prove that his counsel rendered ineffective assistance, a defendant "bears a heavy burden." *Jones v. Page*, 76 F.3d 831, 840 (7th Cir. 1996) (citation omitted). To establish ineffective assistance of counsel, a petitioner must show that: (1) his attorney's performance "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984); and (2) there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "A failure to establish either prong results in a denial of the ineffective assistance of counsel claim." *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002) (citation omitted).

The performance prong requires the defendant to specifically identify acts or omissions that form the basis of his claim of ineffective assistance. *Strickland*, 466 U.S. at 690. Based on the totality of the circumstances, the court must then determine whether the identified acts and omissions fall outside the range of professionally competent assistance. *Id.* The prejudice prong requires the defendant to show that his trial counsel's errors are so serious as to render his trial fundamentally unfair or unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 368–69 (1993). Further, to meet the prejudice prong of *Strickland*, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 131 S. Ct. 770, 792 (2011) (citing *Strickland*, 466 U.S. at 693).

"Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996).

6

The Indiana Court of Appeals found that the Petitioner's post-conviction claim of ineffective assistance of trial counsel lacked merit because it found no evidence in the record to justify an instruction on sudden heat or voluntary manslaughter. In reviewing the Petitioner's claim, the Indiana Court of Appeals properly identified the *Strickland v. Washington* standard as governing the resolution of his ineffective assistance of counsel claim. (*See* Mem. Decision 5, ECF No. 1-2.) Accordingly, this Court must determine whether its application of *Strickland* was unreasonable. In regard to the Petitioner's ineffective assistance of trial counsel claim, the Indiana Court of Appeals concluded that:

> [T]he record contains no evidence that Love was, in fact, acting in sudden heat when he killed Cy. In the absence of any serious evidentiary dispute regarding sudden heat, the trial court should not have instructed the jury on voluntary manslaughter. Consequently, to the extent that the trial court erroneously instructed the jury regarding voluntary manslaughter, any such error was harmless, and Love's counsels cannot have been ineffective for failing to raise it.

(*Id.* 8.)

A federal court may grant habeas relief if the state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); 28 U.S.C. § 2254(d) (stating that a § 2254 petition should be granted if the State court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 131 S. Ct. at 786. The § 2254 "standard is difficult to meet, [but] that is because it was meant to be." *Id.*

Here the Court finds that the Indiana Court of Appeals reviewed the Petitioner's ineffective assistance of trial counsel claim under the proper standard, reasonably applied that

standard to his claim, and rejected that claim. It is not the case, as the Petitioner suggests in his Reply, that "the only way the Indiana Court of Appeals could reach the conclusion that Love was not entitled to a 'sudden heat' instruction and, therefore, was not prejudiced was by ignoring and refusing to apply clearly established Supreme Court precedent, namely *Mullaney* and *Strickland*." (Reply 10.) On the contrary, the Indiana Court of Appeals distinguished *Mullaney* by finding that no heat of passion finding is required when the issue is not properly presented in a homicide case. *See Mullaney*, 421 U.S. at 704. Further, the Indiana Court of Appeals applied *Strickland* by finding that, in light of the absence of evidence raising the issue of sudden heat, the Petitioner's trial counsel could not have been ineffective for failing to raise what it deemed to be a harmless error. The Indiana Court of Appeals did not ignore or refuse to apply either precedent. Moreover, the Petitioner's reliance on *Sanders* is unavailing. As the Respondent notes, *Sanders* is distinguishable from the Petitioner's case because in *Sanders* there was "appreciable evidence of sudden heat." 398 F.3d at 582–83 ("[T]he jury heard testimony that Sanders was provoked into a sudden rage when Pratchett flirted with another and, if you believe Sanders's testimony, when Pratchett threw their son out the car window."). The record at the Petitioner's trial included no "appreciable evidence of sudden heat," therefore *Sanders* is distinguishable on its facts. Because the Indiana Court of Appeals reasonably applied *Strickland* to the Petitioner's claim and found it to be unsubstantiated, his claim is without merit on habeas review pursuant to 28 U.S.C. § 2254(d).

The Petitioner insists in his Reply that facts at trial compelled a sudden heat instruction. (Reply 6.) In support of this proposition, however, the Petitioner merely lists the evidence as recounted by the Indiana Court of Appeals on direct appeal and in its post-conviction decision.

8

Later in his brief, the Petitioner states that "[t]he facts offered at trial, as determined by the Indiana Court of Appeals, clearly raise and support the defense of sudden heat." (Reply 10.) But the Petitioner again offers no specific support for this conclusion. The Petitioner points to the trial counsel's closing argument, in which he argued that voluntary manslaughter happens when "you're mad as hell. And if somebody drew a knife on you, you might be mad as hell too." (Reply 13.) From this argument, the Petitioner insists that the facts at trial supported trial counsel's argument. But the Petitioner's conclusion is not supported by the facts that were in evidence. The record shows that the Petitioner had engaged in a verbal argument with the victim several hours before the murder. The record also permits a finding, based on the Petitioner's statements to his uncle after the incident, that the Petitioner and the victim engaged in another argument immediately before the murder. But "words alone cannot constitute sufficient provocation to give rise to a finding of sudden heat warranting an instruction on voluntary manslaughter." *Matheney v. State*, 583 N.E.2d 1202, 1205 (Ind. 1992). The record also includes the Petitioner's statement to his uncle, suggesting that the victim pulled the knife on him. But this was exactly the type of evidence that was found not to raise the issue of sudden heat in *Burris*. 590 N.E.2d at 580 (defendant's testimony that the decedent "burst into [the defendant's] home with a gun" failed to put the question of sudden heat in issue). No evidence at trial suggested that the Petitioner was suddenly and passionately angry at the sight of the knife. As discussed below, the Petitioner's version of the story suggests that he was in control of his emotions. These are the only facts in the record which even peripherally suggest sudden heat.

Many other facts show that the Petitioner's act was premeditated: there was a significant cooling off period between the initial argument and the murder; the Petitioner became

9

"abnormally quiet" after the initial argument; the Petitioner made contact with the victim later the same night; the Petitioner attempted to hide his presence from the victim's father; the murder weapon was a knife matching knives in the house where the Petitioner was living at the time, suggesting he armed himself with it before the incident; the Petitioner stabbed the victim twenty-one separate times on many different parts of his body; and the victim's body was found 340 feet away from the place where the physical altercation began. Evidence of sudden heat is negated when "a sufficient cooling off period elapsed between the provocation and the homicide." *Morrison v. State*, 588 N.E.2d 527, 531–32 (Ind. Ct. App. 1992) (quotation marks omitted). Further, an attack which is lengthy in duration and involves numerous stabbings "totally excludes the possibility of voluntary manslaughter." *Stidham v. State*, 637 N.E.2d 140, 143 (Ind. 1994). The facts in evidence at trial did not suggest that the Petitioner's crime erupted from a sudden heat. Indeed, the Petitioner's explanation to his uncle that it was "his life or the guy[']s life" suggests that he was not so overcome with passion that his reason was obscured.[1] As the Indiana Court of Appeals stated, "Love told [his uncle] that he stabbed [the victim] because he felt he was in danger, *not* because he was so angry or terrified that his reason was obscured." (Mem. Decision 8, ECF No. 1-2.) Accordingly, for all the reasons discussed, the Court agrees with the conclusion of the Indiana Court of Appeals that instructions on sudden heat and

---

[1]The Petitioner argues that sudden heat and self-defense are not logically incompatible. *See Pinegar v. State*, 553 N.E.2d 525, 528 (Ind. Ct. App. 1990) (stating that the Indiana Supreme Court did not "intend[ ] to preclude, as inherently inconsistent, claims of self defense and killing in a sudden heat"). But the Court need not find that sudden heat and self-defense can never both be raised by the specific facts of a case. Rather, the Court finds that, under the facts in the Petitioner's trial record, the evidence that would have reasonably raised a claim of self-defense logically excluded a claim of sudden heat. As to the Petitioner's argument that it is inconsistent to find that the failure to correct the sudden heat instruction was reasonable because a self-defense instruction would have been appropriate, the Court merely notes that the Petitioner has never argued his trial counsel was ineffective for failing to request an instruction on self-defense, and his opportunity to do so has passed.

voluntary manslaughter were not raised by the evidence at trial.

Applying the *Strickland* standard, it appears that the Petitioner's trial counsel should have known that the law in Indiana required an instruction that the prosecution bore the burden of disproving sudden heat in order to obtain a murder conviction, and that sudden heat was not an element to be affirmatively proved for voluntary manslaughter. *See Sanders*, 398 F.3d at 581–82. Therefore, the failure by trial counsel to object to the erroneous instructions may have been objectively unreasonable in violation of *Strickland* prong one.[2] However, because sudden heat and voluntary manslaughter were not raised by the facts, it was harmless error for trial counsel to fail to correct the erroneous jury instructions. *Burris*, 590 N.E.2d at 581. Thus, even if trial counsel failed to reasonably represent the Petitioner in properly instructing the jury, the Petitioner cannot show any prejudice under the second prong of *Strickland*. Because the facts at trial did not suggest sudden heat or voluntary manslaughter, it is not reasonably probable that the outcome of the Petitioner's trial would have been different had the jury been instructed that it could not find the Petitioner guilty unless the prosecution proved the lack of sudden heat beyond a reasonable doubt, nor do the erroneous instructions, under the facts at the Petitioner's trial, render the trial fundamentally unfair or unreliable. The Indiana Court of Appeals reasonably concluded that there could be no prejudice to the Petitioner from the failure to properly instruct on an issue not raised by the evidence. "Relief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable." *Yarborough v. Alvarado*, 541 U.S. 652, 665–66

---

[2]The Respondent argues that trial counsel did not perform objectively unreasonably in failing to correct an instruction that was not even raised by the evidence. It appears that the Indiana Court of Appeals, however, found that trial counsel's failure was an error, albeit a harmless one. (Mem. Decision 8, ECF No. 1-2 ("any such error was harmless").) In any case, the Court agrees with the Indiana Court of Appeals that the Petitioner's Sixth Amendment rights were not violated because the Court finds that the Petitioner has not established prejudice under *Strickland* prong two.

(2004) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). The Court finds that the Indiana Court of Appeals decision applying *Strickland* to foreclose the Petitioner's claim of ineffective assistance of trial counsel was not objectively unreasonable. Therefore, the Court will deny the Petitioner's claim in ground one.

**II.     Ineffective Assistance of Appellate Counsel**

In ground two of his Petition, the Petitioner asserts that his appellate counsel on direct appeal "rendered ineffective assistance by failing to argue on appeal that the erroneous murder and voluntary manslaughter instructions were fundamental error." (Petition 8.) The Respondent insists, as above, that the Indiana Court of Appeals reasonably applied federal law in denying the Petitioner's ineffective assistance of appellate counsel claim. Because sudden heat and voluntary manslaughter were not raised by the facts at trial, the Respondent argues, the Petitioner's appellate counsel could not have been ineffective for failing to raise the harmless error on appeal, particularly because of the high standard for establishing fundamental error, as discussed below. The Respondent also argues that a fundamental error claim could not have succeeded under the facts of the Petitioner's case. The Petitioner replies that under *Sanders*, the erroneous instructions issue was clearly stronger than the sufficiency of the evidence claim raised on direct appeal.

"The failure of appellate counsel to raise an issue on appeal requires the court to compare the issue not raised in relation to the issues that were raised; if the issue that was not raised is 'both obvious and clearly stronger' than the issues raised, the appellate counsel's failure to raise the neglected issue is objectively deficient." *Sanders*, 398 F.3d at 585 (quoting *Lee v. Davis*, 328

12

F.3d 896, 900–01 (7th Cir. 2003)). *See Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."). An appellate counsel is entitled to winnow out weak arguments and focus on the central issues. *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983).

Under the fundamental error exception, an appellate counsel may raise an issue on appeal in spite of trial counsel's failure to object at trial. *Jewell v. State*, 887 N.E.2d 939, 940 n.1 (Ind. 2008). The fundamental error exception is "extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *McQueen v. State*, 862 N.E.2d 1237, 1241 (Ind. Ct. App. 2007) (citing *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006)). A fundamental error "must be so prejudicial to the rights of the defendant as to make a fair trial impossible." *Carden v. State*, 873 N.E.2d 160, 164 (Ind. Ct. App. 2007) (citing *Ritchie v. State*, 809 N.E.2d 258, 273 (Ind. 2004)).

The Indiana Court of Appeals denied the Petitioner's ineffective assistance of appellate counsel claim, finding that due to the absence of evidence suggesting sudden heat or voluntary manslaughter, any error in the instructions was harmless, and appellate counsel was not ineffective for failing to raise it on appeal. (Mem. Decision 8, ECF No. 1-2.) The question before the Court is again whether the Indiana Court of Appeals unreasonably applied federal law on this point. 28 U.S.C. § 2254(d). For many of the reasons discussed above, the Court concludes that it did not.

On appeal, the Petitioner's appellate counsel argued that his conviction was not

supported by sufficient evidence. The Petitioner now insists that a fundamental error challenge to the jury instructions on murder and voluntary manslaughter would have been stronger. If the facts in the Petitioner's case were identical to those in *Sanders*, the Petitioner would be correct. In *Sanders*, the court found that "[i]f Sanders's counsel had raised [the incorrect instructions on murder and voluntary manslaughter] on direct appeal, the appellate court would have been bound by law to grant him a new trial." 398 F.3d at 584. Accordingly, the *Sanders* court found that such an argument "was an obvious and stronger argument than the arguments [Sanders's appellate counsel] made." *Id.* at 585. But, as discussed above, this case is not *Sanders*. Because the record at trial did not raise sudden heat or voluntary manslaughter, appellate counsel's arguments about the murder and voluntary manslaughter instructions would have likely failed under the reasoning of *Burris*. Given the facts at the Petitioner's trial, there is no indication that his appellate counsel could have satisfied the high standard necessary to satisfy the fundamental error exception. The Petitioner notes that appellate counsel stated that sufficiency of the evidence is generally his "last ditch issue." (Reply 14 (citation omitted).) But a sufficiency claim has more potential merit than a claim that will necessarily be foreclosed on its facts. The Court cannot find that a fundamental error claim concerning the instructions was "both obvious and clearly stronger" than the sufficiency claim. *Sanders*, 398 F.3d at 585. Accordingly, the Court agrees with the Indiana Court of Appeals's determination that the Petitioner's appellate counsel was not ineffective for failing to bring a fundamental error claim on these facts. Nor has the Petitioner established prejudice based on his appellate counsel's failure to bring this claim. For all these reasons, the Court finds that the Indiana Court of Appeals reasonably applied federal law when it denied the Petitioner's ineffective assistance of appellate counsel claim, and the Court will

therefore deny this second ground for habeas relief pursuant to 28 U.S.C. § 2254(d).

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the Court must consider whether to grant the Petitioner a certificate of appealability. To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted). When the court dismisses a petition on the merits, the requirement to obtain a certificate of appealability "is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

For the reasons stated in this Opinion and Order, the Court concludes that the Petitioner is not entitled to relief because his claims are substantively without merit. At the Petitioner's trial, he presented no evidence of sudden heat. "Where there is no evidence of sudden heat, an incorrect instruction on voluntary manslaughter is not reversible error," *Burris*, 590 N.E.2d at 581, and the failure to raise objections to erroneous instructions about matters that were not raised by the evidence does not constitute ineffective assistance of counsel under *Strickland*, either at trial or on appeal. The Petitioner has not established that jurists of reason could debate the correctness of these rulings or find a reason to encourage him to proceed further. Accordingly, the Court declines to issue him a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [ECF No. 1], DENIES the Petitioner a certificate of appealability, and DIRECTS the Clerk to close this case.

SO ORDERED on April 15, 2013.

                                             s/ Theresa L. Springmann
                                             THERESA L. SPRINGMANN
                                             UNITED STATES DISTRICT COURT
                                             FORT WAYNE DIVISION